ROBERT WAYNE JOHNSON,       )
      )
      Petitioner,       )
      )
vs.       )       **ORDER**
      )
HUBERT CORPENING,       )
      )
      Respondent.       )
_____ )

**THIS MATTER** is before the Court on Petitioner Robert Wayne Johnson's pro se

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1). Also before the

Court is Petitioner's motion for appointment of counsel and evidentiary hearing. (Doc. No. 3.)

## I.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY[1]

Petitioner is a prisoner of the State of North Carolina who, on November 11, 2008, was

indicted by a Wilkes County Grand Jury for the first degree murder of Kenneth Ray Miller. On

March 8, 2010, the Wilkes County Grand Jury indicted Petitioner for the first degree kidnapping

and malicious maiming of an eye of Kenneth Ray Miller. On June 19, 2009, the Wilkes County

Superior Court entered an order acknowledging "that the State of North Carolina may proceed

with the prosecution of this case as a capital case."

On June 1, 2010, Petitioner entered an Alford plea to second-degree murder pursuant to

an agreement with the State. As part of the agreement, Petitioner stipulated to the existence of

---

[1] Unless otherwise indicated, the factual and procedural history recited herein is taken from an Order entered on February 13, 2012 by the Wilkes County Superior Court denying Petitioner's Motions for Appropriate Relief filed on June 7, 2011 and September 29, 2011. (Order Den. Def's Mot. for Appropriate Relief 25-47, Doc. No. 1-9.)

the aggravating factor that the offense was especially heinous, atrocious and cruel, and the State

dismissed the offenses of first degree kidnapping and malicious maiming of an eye.

After the Court conducted the plea colloquy with Petitioner, the State presented the

factual basis for Petitioner's plea:

> [I]n May of 2002, Ms. Ellen Miller reported her son, Kenneth Miller, missing. . . .
> [T]he last time she saw Kenneth . . . he was getting in a car with Margaret Johnson,
> his ex-wife.
>
> The case remained cold and no information was obtained until early summer 2008,
> when [law enforcement] received information from several different people that . .
> . Robert Wayne Johnson had been talking about the killing of Kenneth Miller.
>
> [Lieutenant David Carson of the Wilkes County Sheriff's Dept.] and Special Agent
> [Chris Laws] of the [State Bureau of Investigation] . . . spoke with [Robert]
> Johnson, [who stated] . . . that he and Margaret were living in A.C. Walker's trailer
> park . . . in 2002, along with Margaret's children,[sic] Heaven, Austin, Dale, and
> Angel; that the children were outside playing and had started talking about sex and
> that Heaven had told the other children that . . . her father, Kenneth Miller, had had
> sex, with her, and then they told Ms. Margaret Johnson what was said.
>
> Margaret and Heaven had talked alone, according to [Robert], and then Margaret
> told Robert that Heaven had told her that Kenny had taken her up to the property
> of Kenny's family, up in the mountains, and that she had taken her clothes off and
> that the two of them had had sex, and when she told . . . Kenny that it was hurting,
> he had stopped.
>
> Margaret . . . and . . . Robert . . . agreed to take Kenny to Church's Rock and assault
> him there.
>
> Margaret dropped Robert off at Church's Rock and then . . . picked up Kenny at his
> mother's house.  Margaret and Kenny drove back to Church's Rock . . . where
> Robert was hiding and waiting.
>
> [Margaret and Kenny] drove up; Robert came out and confronted Kenny and asked
> how he could do such a thing to his daughter, at which time Kenny denied it, and
> [Robert] hit him once, striking him across the jaw.  At that point, Kenneth ran, and
> Margaret chased after [him] with a ball bat, caught him a few feet away from the
> car and began to beat him with the ball bat.  Kenneth fell into the ditch, and
> Margaret jumped on top of him as a car drove by.
>
> . . . Margaret told [Robert] . . . to bring the car up.  He backed the car up the road

to where [Margaret and Kenneth] were[.] . . . Margaret was on top of Kenny, stabbing him with a tire plugging tool in the chest area. Robert [stated] that at that point he . . . threw up, and that when he got out of the car, Margaret had told him to pop the trunk. And she walked Kenny up to the car and told Kenneth to get in the trunk.

Robert and Margaret . . . told [Kenneth] they were going to take him to the hospital, but . . . they drove him to the Royal's Cemetery, which is in the Sheets Gap section of Wilkes.

When they got out there, Margaret handed . . . Robert a shovel, told him to dig a hole [which he did]. . . .

They went back to the car and got Kenny out, at which point Kenny . . . admit[ted] . . . according to them, to the molestation . . . And they told Kenny to get in the hole, which[sic] he sat down by [himself]. Margaret then grabbed Kenny by the hair of the head, pulled his head back, and stabbed him several times in the eye sockets with that tire plugging tool, and . . . Robert began to fill the hole with dirt.

[H]e had filled the hole up to about [Kenny's] waist . . . and Kenny raised his hand up, Robert threw a shovelful of dirt, hit the hand, at which time [Kenny] put his hand back down and never moved again, and Robert continued to fill the hole.

Robert and Margaret . . . left, and . . . Margaret had told . . . Robert not to talk about it anymore.

Robert . . . cooperated with [law enforcement] and took [them] to the site and pointed out exactly where Kenny was buried . . .

The trial court accepted Petitioner's plea and sentenced him to 313-385 months in prison.

Petitioner did not file a direct appeal. (Pet. 2, Doc. No. 1.)

On June 7, 2011, Petitioner filed a pro se Motion for Appropriate Relief ("MAR") and motion for appointment of counsel in Wilkes County Superior Court. In his MAR, Petitioner claimed trial counsel failed to inform him prior to his plea that while awaiting her own trial, Margaret Johnson had written two notes admitting she had murdered Kenneth Miller and had forced Petitioner to dig a grave and bury Miller; that Margaret gave the notes to a fellow inmate, Stephanie Evans, who hid them; and that Evans told Detective Carson and Special Agent Laws about her conversations with Margaret and told them where she had hidden Margaret's notes.

The state court appointed North Carolina Prison Legal Services ("NCPLS") to represent Petitioner and provided NCPLS counsel 60 days to file an amended MAR on Petitioner's behalf, if counsel believed it to be in Petitioner's best interest.

On September 29, 2011, Petitioner filed a second pro se MAR, reiterating his assertion that trial counsel "withheld" evidence that Margaret had written two notes admitting she had murdered Kenneth Miller and given the notes to Stephanie Evans. Petitioner's appointed attorney did not file an amendment to either MAR but did amend the exhibits to Petitioner's MAR(s).

The Wilkes County Superior Court found that Detective Carson, the lead investigator in the case, failed to turn over copies of Margaret's notes to prosecutors. Consequently, copies of the notes were not turned over to trial counsel as part of discovery. Counsel did receive Detective Carson's hand-written notes and Agent Laws' typed notes of the interview with Stephanie Evans, in which she talked about the two notes. (Aff. of Attny Jay Vannoy 12, Doc. No. 1-9.) Evans's statement indicates that Margaret told her Petitioner "never had any part of it except being with [Margaret]," and that Petitioner hit Miller in the mouth one time and helped bury him. (Vannoy Aff., supra.)

According to trial counsel, he discussed Evans's statement and the statements made by Margaret to Evans with Petitioner prior to his entering the plea to second-degree murder. (Vannoy Aff. supra.) Petitioner disputes this assertion. Regardless, the content of Margaret's notes were reproduced in their entirety in the Wilkes County Superior Court's February 13, 2012 Order denying Petitioner's MARs. Petitioner's subsequent petition for writ of certiorari in the North Carolina Court of Appeals was dismissed on April 11, 2012. Johnson v. State, P12-280 (N.C. Ct. App. filed Mar. 26, 2012).

4

It appears Petitioner's next action was to file a civil rights complaint pursuant to 42 U.S.C. § 1983 in federal district court, alleging that his trial attorneys and prosecutors violated his civil rights by withholding Margaret Johnson's notes from him.  See Johnson v. Vannoy, et. al, 5:14cv55-FDW (W.D.N.C. filed April 24, 2014), Doc. No. 1.  His § 1983 complaint was dismissed September 29, 2014 because his claims challenged the validity of his criminal conviction, which had not been vacated.  Id. at Doc. No. 11.

On July 27, 2015, Petitioner filed another MAR, which was dismissed on November 16, 2015.  State's Resp. to Cert. Pet. 2, Johnson v. State, P15-979 (N.C. Ct. App. filed Dec. 31, 2015) available at https://www.ncappellatecourts.org.  Petitioner's petition for writ of certiorari in the North Carolina Court of Appeals was denied on January 6, 2016.  Docket sheet, Johnson, P15-979.  Petitioner's January 14, 2016 motion for a re-sentencing hearing was dismissed by the North Carolina Supreme Court on March 17, 2016.  (Mar. 17, 2016 Order of N.C. Supreme Court 1, Doc. No. 1-4.)

Petitioner filed the instant federal habeas Petition on April 21, 2016 when he signed it under penalty of perjury and placed it in the prison mail system.  (Pet. 14, Doc. No. 1.)  He raises the following grounds for relief:  the State suppressed exculpatory evidence (Margaret Johnson's notes); trial counsel rendered ineffective assistance by failing to obtain Margaret's notes from the State; and Petitioner's indictment was obtained in violation of the due process clause because the existence of Margaret's notes was not disclosed to the grand jury.  (Pet., supra, at 5, 6, 8.)

## II.     STANDARD OF REVIEW

The Court is guided by Rule 4 of the Rules Governing Section 2254 Cases, which directs district courts to examine habeas petitions promptly.  Rule 4, 28 U.S.C.A. foll. § 2254.  When it plainly appears from any such petition and any attached exhibits that the petitioner is not entitled

to relief, the reviewing court must dismiss the motion.  Id.

## III.    DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a statute of limitations for § 2254 petitions by a person in custody pursuant to a state court judgment.  28 U.S.C. § 2244(d)(1).  The petition must be filed within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.  The limitations period is tolled during the pendency of a properly filed state post-conviction action.  28 U.S.C. § 2244(d)(2).

Petitioner's asserts that he knew nothing about the existence of Margaret Johnson's notes or statements to Stephanie Evans until after he was sentenced and incarcerated.  Assuming, without deciding, that those assertions are true, the Court concludes Petitioner's statute of limitations began to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  § 2244(d(1)(D).  At the latest, that date was February 13, 2012, when the Wilkes County Superior Court included the content of the notes in its Order denying Petitioner's MAR.  The statute of limitations was tolled through the conclusion of Petitioner's state post-conviction action, see § 2244(d)(2); that is, until April 11, 2012, when the North Carolina Court of Appeals dismissed his petition for writ

of certiorari.

The statute of limitations then ran for 365 days until it finally expired on or about April 11, 2013, more than three years before Petitioner filed the instant federal habeas Petition. Petitioner's 2015 MAR did not resurrect or restart the statute of limitations. See Minter v. Beck, 230 F.3d 663, 665–66 (4th Cir. 2000). Thus, the instant federal habeas Petition is untimely and must be dismissed as such.[2] Petitioner's motion for appointment of counsel and an evidentiary hearing, likewise, will be dismissed.

**IT IS, THEREFORE, ORDERED** that:

1) The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is

   **DISMISSED** as untimely;

2) Petitioner's motion for appointment of counsel and evidentiary hearing (Doc. No. 3) is **DENIED**; and

3) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines

---

[2] The Court is aware of the Fourth Circuit's directive in Hill v. Braxton, 277 F.3d 701, 706 (4th Cir. 2002), that a court must warn a petitioner that his case is subject to dismissal before dismissing a petition as untimely filed when justice requires it. Here, however, such warning is not necessary because the record demonstrates Petitioner is not entitled to equitable tolling of the statute of limitations; nor is he entitled to statutory tolling under any other provision of § 2244(d)(1).

Equitable tolling of a habeas petition is available only when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). Under Fourth Circuit precedent, equitable tolling is appropriate in those "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)) (internal quotation marks omitted).

Here, despite obtaining Margaret Johnson's notes in February 2012, Petitioner did not pursue further relief in the state or federal courts until he filed his federal civil rights complaint on April 24, 2014, more than a year after the statute of limitations under AEDPA had expired. He did not file the instant habeas Petition until roughly nineteen months after his civil rights complaint had been dismissed. Moreover, both his civil rights complaint and the instant Petition rely upon the same allegations and evidence discussed in the Wilkes County Superior Court's February 2012 Order denying Petitioner's 2011 MARs. Thus, the record demonstrates Petitioner has not pursued his rights diligently, making him ineligible for equitable tolling of the statute of limitations. See Holland, 560 U.S. at 649.

to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: November 8, 2016

Frank D. Whitney
Chief United States District Judge